IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RYAN C. INMAN,                        )
        Plaintiff,                    )
                                      )
    v.                                ) Civil Action No. 11-666
                                      )
TECHNICOLOR USA, INC., et al.         )
        Defendants.                   )

MEMORANDUM

Gary L. Lancaster,
Chief Judge.                          November 17, 2011

        This is an action in tort.  Plaintiff, Ryan Inman,
alleges that twenty defendants, including eBay Inc. ("eBay"),
sold or otherwise distributed vacuum tubes or products
containing vacuum tubes, which were defective due to the fact
that they contained mercury.  Inman seeks compensatory and
punitive damages.  eBay has filed a motion to dismiss [Doc. No.
153], arguing that Inman does not state a plausible claim for
relief, and even if he does, eBay is immunized by the
Communications Decency Act (the "CDA").

        For the reasons set forth below, the motion will be
granted, without prejudice to Inman's right to amend.

I.    BACKGROUND

Except where otherwise indicated, the following allegations are drawn entirely from Inman's complaint.

Inman obtained vacuum tubes and products containing vacuum tubes from several of the defendants. He used those vacuum tubes, for purposes unclear from the face of the complaint, for a period of approximately eight years between 2001 and May 21, 2009. On the latter date, Inman learned he had contracted what he describes as "acute mercury poisoning and/or toxicity." He then commenced this suit in the Court of Common Pleas for Allegheny County, Pennsylvania. eBay timely removed the case to this court, pursuant to 28 U.S.C. § 1146(b). Jurisdiction is proper based on complete diversity of the parties pursuant to 28 U.S.C. § 1332(a).

In his First Amended Complaint (the "complaint"), Inman identifies in detail the vacuum tubes he alleges caused his injuries, and the defendants that manufactured them. [Doc. No. 136]. eBay is not listed as a defendant that manufactured vacuum tubes. In fact, Inman specifically mentions eBay in only three factual allegations prior to pleading his causes of action. In paragraph eight of the complaint, Inman describes certain characteristics of eBay as a party, including that: "Defendant-EBAY maintains a web address and/or online presence and/or is on the world wide web at www.ebay.com." [Doc. No.

2

136, ¶8]. In paragraph twenty, in the course of describing defendant Tube Zone, Inman states that: "Defendant-Tube Zone maintains a web address and/or online presence and/or is on the world wide web on Defendant-EBAY at http://stores.ebay.com/The-Tube-zone and/or at www.tubezone.net." [Doc No. 136, ¶20]. Finally, in paragraph thirty-two, defendant states that he "purchased and/or obtained the subject electronic vacuum tubes... and/or products that contained the subject electronic vacuum tubes... directly from" a list of fourteen defendants, including eBay. [Doc. No. 136, ¶32]. The complaint does not describe eBay's business model in any detail.

Inman then goes on to plead numerous causes of action against various defendants. Against eBay and the other thirteen distributor defendants included in paragraph thirty-two, he asserts claims for strict product liability (Count VII), breach of the implied warranty of merchantability (Count VIII), breach of the warranty of fitness for a particular purpose (Count IX), negligence (Count X), negligence per se arising from defendants' violation of the Toxic Substances Control Act, 15 U.S.C. § 2601 et. seq. (the "TSCA"), and various related regulations (Count XI), and breach of express warranty (Count XII).

In connection with Count VII for strict product liability, Inman alleged the following:

75.     Defendants sold and/or distributed the subject
electronic vacuum tubes and/or electronic equipment and/or
products that contained subject vacuum tubes, as
components, and/or put the subject vacuum tubes and
electronic equipment and/or products that contained subject
electronic vacuum tubes, as components, into the stream of
commerce.

76.     Accordingly, all Defendants, subject to Count VII,
qualify as and/or constitute 'sellers' under Restatement
(Second) of Torts §402A.

. . .

78.     Plaintiff purchased the subject electronic vacuum
tubes and/or products that contained the subject electronic
vacuum tubes directly from Defendants.

[Doc. No. 132]. Each subsequent count asserted against eBay

relies on the preceding paragraphs, sometimes with immaterial

variations.

        Defendant moved to dismiss, arguing that Inman's

claims against it cannot meet the pleading standard established

by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and that

at most, he seeks to hold eBay responsible for the conduct of

Tube Zone, a third party user. [Doc. No. 153]. eBay argues

that the CDA immunizes it from such liability for third party

conduct.

        In the brief accompanying its motion, eBay describes

its business model without citation to the complaint. It also

asks the court to take judicial notice of its online User

Agreement, which states in part:

4

[W]e are not a traditional auctioneer. Instead our sites are venues to allow anyone to offer, sell and buy just about anything . . . in a variety of pricing formats and locations, such as stores, fixed price formats and auction-style formats. We are not involved in the actual transaction between buyers and sellers.

[Doc. No. 154 at 3, n.3].

In response, Inman argues that his claims against eBay are based on eBay's direct conduct, and reiterates his allegation that eBay was "one – of fourteen – parties that placed the subject electronic vacuum tubes into the stream of commerce – by selling, shipping, distributing, and packaging the same." [Doc. No. 172, p. 5]. He argues that he sufficiently alleged that eBay "sold an unreasonably dangerous product," "failed to warn of dangers associated" with that product, and "shipped defective products." [Doc. No. 172 at 6]. Finally, Inman argues that the CDA applies only to claims involving communication while his complaint implicates eBay's [d]irect conduct." [Doc. No. 172 at 9].

For the reasons that follow, the court agrees with eBay and its motion to dismiss will be granted, without prejudice.


II.     STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed

to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, a plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570)). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555)); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("The District Court . . . may disregard any legal conclusions."). The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555.

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), we must follow a three-step process. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, we must lay out the elements of the claim the plaintiff must plead. Id. Second, we should identify the bare allegations which are "not entitled to the assumption of truth." Id. (internal quotations omitted). Third, we assume the veracity of the well-pleaded factual allegations and whether they give rise to a plausible claim for relief. Id.

We may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 556, 563 n.8. Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In short, the motion to dismiss should not be granted if plaintiff alleges facts which could, if established at trial, entitle him to relief. Id. at 563 n.8.

It is on this standard that the court has reviewed eBay's motion. Based on the pleadings of record and the briefs filed in support of and opposition thereto, the court is not persuaded that Inman has alleged facts that "raise a right to relief above the speculative level ... on the assumption that the allegations in the complaint are true (even if doubtful in

7

fact)."   Twombly, 550 U.S. at 555 (citations and emphasis omitted).[1]


III.    DISCUSSION

        We must decide whether the well pled facts in the complaint support a finding of liability based on eBay's direct conduct or the conduct of third parties using eBay's website. Before we do so, however, we must first address what, if any, materials we may consider outside of the complaint, and which state's law of products liability applies to this action.

        A.      Threshold Legal Issues

                1. Judicial Notice

        In addition to the facts alleged in the complaint, eBay asks us to take judicial notice of the User Agreement posted on its website.  A District Court may take judicial notice of a document "integral to or explicitly relied upon in the complaint" without converting a motion to dismiss into one for summary judgment.  Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004); In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  As the court of appeals has

---

[1]   Inman has argued that Twombly does not apply to this case.  He points out that eBay is the only named defendant to move to dismiss the complaint, and argues that his claims "rise[] above a 'speculative' level," due in part to his detailed pleading of "Where and from whom Plaintiff obtained such products."  However, that other defendants have chosen to answer the complaint has no bearing on the complaint's legal sufficiency and is not determinative of whether it survives a separate defendant's motion to dismiss.

noted, this prevents "the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." Lum, 361 F.3d at 222 n.3.

In this instance, Inman has referenced the eBay website generally in his complaint, but not the page containing the User Agreement specifically. The website is integral to the complaint, as Inman pleads that at least one defendant, Tube Zone, used the eBay website to sell the allegedly defective vacuum tubes. eBay notes that to use its website, "buyers and sellers agree" to the User Agreement. [Doc. No. 154 at 3, n.3]. To allow Inman to rely on eBay's homepage but avoid dismissal by not referring to the User Agreement specifically would contravene the policy delineated by the United States Court of Appeals for the Third Circuit.

This approach was taken by the United States District Court for the District of New Jersey in Edelman v. Croonquist, No. 09-1938, 2010 WL 1816180 at *1 n.1 (D.N.J. May 4, 2010), which took judicial notice of a separate area of a website referred to in the complaint in order to "provide[] context" to plaintiffs' defamation claim. Id. We further note that Inman has neither contested the request for judicial notice, nor disputed the authenticity of the User Agreement. Therefore, we

9

will take judicial notice of the User Agreement and the description of eBay's business model contained therein.

## 2. Choice of Law

To determine the elements of Inman's claims, as a federal court sitting in diversity, we must first determine which state's law applies. As this action is brought in the United States District Court for the Western District of Pennsylvania, Pennsylvania's choice of law rules apply to this personal injury action. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Blakesley v. Wolford, 789 F.2d 236, 238 (3d Cir. 1986).

Pennsylvania courts apply the "significant relationship" test set forth in the Second Restatement of Conflict of Laws, which considers the location of the injury, the location of the injurious conduct, the domicile of the various parties, and the location where the parties' relationship is centered. Restatement (Second) of Conflict of Laws § 145(2); Griffith v. United Air Lines Inc., 203 A.2d 796, 805 (Pa. 1964). In a personal injury action, the local law of the state where the injury occurred applies unless another state has a more significant relationship. Restatement (Second) of Conflict of Laws § 146. This court must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the issues in question. Melville v.

10

Am. Home Assur. Co., 584 F.2d 1306, 1311 (3d Cir. 1978); see also Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970) (court must do more than merely count the significant contacts).

An analysis of the relevant contacts demonstrates that Pennsylvania has the most significant relationship to the issues involved in this case. This is an action for personal injury, and thus the locus of the injury takes precedence. Inman is a Pennsylvania resident who alleges that he was injured by defendant's products in Pennsylvania. The various defendants in this case are scattered across the country and the world; accordingly, the interests of their domiciles are diluted to the extent they conflict with Pennsylvania and each other. Certainly, their relationship with Inman is centered in Pennsylvania. That is where Inman purchased the allegedly defective products and where the products were shipped. Therefore, the court will apply Pennsylvania law to Inman's claims.

B.    Liability for Direct Conduct

Inman argues that his claims are based on eBay's "[d]irect conduct," and do not depend on the actions of third parties such as Tube Zone. [Doc. No. 172, p. 9]. As pled in his complaint, he bases liability on the premise that, by selling, distributing, or placing the vacuum tubes into the stream of commerce, eBay is a seller for purposes of section

11

402A of the Second Restatement of Torts. [Doc. No. 136, ¶¶ 75-76, 82-836, 90-91, 101-02, 115-116].

## 1. Definition of "Seller"

Under Pennsylvania law, section 402A governs strict products liability. Berrier v. Simplicity Mfg., 563 F.3d 38, 46 (3d Cir. 2009); Webb v. Zern, 220 A.2d 853, 854 (Pa. 1966). A defendant can only be held strictly liable for harm caused by a defective or unreasonably dangerous product if he was a "seller" of the product under this section. Status as a seller depends on the relationship between the defendant, the defective product, and the overall chain of distribution. Frey v. Harley Davidson Motor Co., 7345 A.2d 1, 17 (Pa. Super. Ct. 1999). Pennsylvania courts have developed a four part test which asks: (1) Is the defendant the only member of the marketing chain available to the injured plaintiff?; (2) Would holding the defendant liable as a "seller" incentivize safety?; (3) Is the defendant in a better position than the consumer to prevent the circulation of defective products?; and (4) Can the defendant distribute the cost of compensating for the plaintiff's injuries? Greenwood v. Busch Entm't Corp., 101 F. Supp. 2d 292, 296 (E.D. Pa. 2000); Musser v. Vilsmeier Auction Co., Inc., 572 A.2d 279, 282 (Pa. 1989).

There are a number of ways a consumer could purchase or obtain a product from a defendant in which the defendant

would not be considered a "seller" under section 402A.  For example, the Pennsylvania Supreme Court held that a traditional auctioneer should not be held strictly liable as a "seller," as an auctioneer has only a fleeting relationship with the goods or their manufacturer.  Musser v. Vilsmeier Auction Co., 562 A.2d 279, 283 (Pa. 1989) ("Unless an auctioneer deals exclusively for a manufacturer or business enterprise, or buys and deals regularly in his product, he is the medium and the message but not a regular seller as conceived in 402A.").  Similarly, in Balczon v. Machinery Wholesalers Corp., 993 F. Supp. 900 (W.D. Pa. 1998), the court found that a broker facilitating a liquidation could not be a "seller" where "[i]t never had physical possession of the [product] and the [product] was never moved or stored in a facility controlled or owned by" the defendant.  993 F. Supp. at 902.

## 2. Plaintiff's Allegations

As discussed above, Inman has pled only three factual allegations specific to eBay: paragraph eight, detailing information about eBay, including that it maintains a web presence; paragraph twenty, describing Tube Zone and its online presence at eBay; and paragraph thirty-two, in which Inman alleges he "purchased and/or obtained" the vacuum tubes from eBay and thirteen other defendants.  None of these statements are supported by any additional facts.

13

All other allegations implicating eBay are included under the headings of Inman's causes of action and summarized above.   Inman claims that the seller/distributor defendants, including eBay, "sold and/or distributed... and/or put the vacuum tubes... into the stream of commerce" [Doc. No. 136, ¶ 75, 82, 90]; that they are "sellers" as defined by section 402A [id., ¶¶ 76, 83, 91, 102, 116]; and that he purchased the tubes "directly from Defendants" [id., ¶ 79, 85, 94, 107].   In each instance, these statements are mere recitations of the elements of Inman's cause of action and are not sufficient to form the factual basis of a claim.  Iqbal, 129 S.Ct. at 1949-50.

### 3. Plaintiff's Claim for Relief

Liability as a "seller," as defined by Section 402A, must be supported by allegations of a relationship among eBay, the product, and Inman sufficient to justify holding eBay liable for Inman's injuries.  eBay's arguments that it takes no part in any transaction on its website, and the User Agreement included on its website stating the same, illustrate the insufficiency of Inman's bare allegation that he "purchased and/or obtained" vacuum tubes from eBay.   Plaintiff has not set forth any facts demonstrating that eBay acts as anything more than an online forum where sellers such as Tube Zone may peddle their wares to buyers such as Inman.

14

Inman has not pled facts alleging that eBay is so connected to the overall chain of distribution as to suggest a relationship with the manufacturer or product "beyond their immediate sale." Musser, 562 A.2d at 283. Specifically, he has not alleged that eBay, at any time, had anything more than a fleeting connection to the allegedly defective products. He has not alleged that eBay ever had physical possession of the products, that they were moved or stored in a facility owned by eBay, or any other facts to suggest that holding eBay responsible would incentivize safety, that eBay is the only member of the marketing chain available, or that eBay is in a better position than Inman to prevent the circulation of such defective vacuum tubes.

Simply put, Inman has not pled facts sufficient to allow the court to draw the reasonable inference that eBay may be liable as a result of its direct conduct as a "seller" of vacuum tubes under Pennsylvania law.

C.    Liability for Third Party Conduct

We assume for purposes of this opinion that the facts alleged could plausibly give rise to a claim of negligence based on the conduct of defendant Tube Zone while using eBay's website. eBay argues that it is immune from any such claims due to the CDA. Inman responds that the CDA applies only to communications, while it seeks to hold eBay responsible for its

15

conduct, "specifically, business transactions and the shipping and packaging of goods." [Doc. No. 172, p. 9].

Section 230 of the CDA provides, in applicable part: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). For immunity to apply, the defendant must be an "interactive computer service,"[2] and the allegedly harmful content must have originated from a different "information content provider."[3] 47 U.S.C. § 230(c). It is appropriate to address immunity on a Rule 12(b)(6) motion if the elements necessary to make an immunity finding are apparent from the face of the complaint. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, 564 F. Supp. 2d 544, 550 (E.D. Va. 2008).

Courts applying section 230 have consistently applied it to communication which resulted in tortious conduct. For example, in Green v. Am. Online, Inc., 318 F.3d 465 (3d Cir. 2003), a third party user caused the plaintiff's computer to restart by way of a malicious software program, allegedly causing $400 in damages. Id. at 469. The interactive computer

---

[2]    "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." 47 U.S.C. § 230(f)(2).

[3]    "The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

16

service, America Online, moved to dismiss the plaintiff's tort claims based on the CDA. Id. at 468. The court of appeals affirmed, holding that to find AOL liable for its failure to prevent this conduct would run afoul of the immunity provisions of section 230. Id. at 471. In doing so, the court held that the malicious program constituted "information" for purposes of the statute, even though it was not communication in the traditional sense. Id. at 471.

In a case similar to the one here, a plaintiff sued the online classified advertisement service Craigslist, Inc., after he was shot with a gun the assailant had purchased on Craigslist. Gibson v. Craigslist, Inc., No. 08 Civ. 7735(RMB), 2009 WL 1704355 (S.D.N.Y. June 15, 2009). The plaintiff argued that Craigslist owed it a duty of care to prevent its users from obtaining "inherently hazardous objects" such as handguns. Id. at *1. The court, however, found that the plaintiff was actually seeking to hold Craigslist liable for its failure to prevent or screen "the dissemination of a third party's content, i.e., the gun advertisement in question." Id. at *4. Craigslist was found to be immune. See also Doe v. MySpace, Inc., 528 F.3d 413 (5th Cir. 2008) (barring negligence claims against interactive computer service MySpace based on communications which led to the sexual assault of a minor).

17

eBay has also cited two California state cases in support of its contention that it is an auctioneer whose activity is immune from suit under the CDA. See Gentry v. eBay, Inc., 121 Cal. Rptr. 2d 703 (Cal. App. Ct. 2002) (holding eBay immune from liability for sales of fake autographed sports memorabilia); Stoner v. eBay, No. 305666, 2000 WL 1705637 at *3 (Cal. Super. Ct. Nov. 1, 2000) (finding that "[p]laintiff's attempt to impose responsibility on eBay as the seller of items auctioned over its service is no different from the unsuccessful attempts that have been made to hold computer service providers liable as distributors rather than as publishers of defamatory or pornographic materials").  These cases further support the proposition that sales made by a third party are considered information for purposes of the CDA.

Given the law cited above, the CDA protects eBay from liability for Tube Zone's tortious activity in this case.  Inman does not appear to dispute that eBay is an interactive computer service, as defined by 47 U.S.C. § 230(f)(2), or that Tube Zone is not affiliated with eBay beyond its use of eBay's website. It is true that Inman was injured by tortious conduct.  However, whether information disseminated through a website results in a tortious act has no effect on immunity under the CDA.  Like the malicious program in Green and the gun sale in Gibson, the alleged sale of vacuum tubes in this case was facilitated by

18

communication for which eBay may not be held liable under the CDA.  Therefore, to the extent Inman seeks to hold eBay liable for Tube Zone's tortious conduct, eBay is immune.

## IV.    CONCLUSION

Inman has failed to plead facts sufficient to demonstrate that eBay has engaged in any direct conduct by which it could be held liable as a seller under Pennsylvania products liability law.  To the extent his claims rest on the use of eBay's website by third party users, the claims are barred by the Communications Decency Act.  eBay's motion to dismiss [Doc. No. 154] will be granted, and the complaint [Doc. No. 136] will be dismissed as to eBay alone, without prejudice to Inman's right to amend his complaint.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RYAN C. INMAN,                        )
            Plaintiff,                )
                                      )
    v.                                ) Civil Action No. 11-666
                                      )
TECHNICOLOR USA, INC., et al.         )
            Defendants.               )


ORDER

Gary L. Lancaster,
Chief Judge.

            AND NOW, this _17_ day of November, 2011, IT IS HEREBY

ORDERED that, the Motion to Dismiss Amended Complaint filed by

defendant eBay Inc. is GRANTED, without prejudice.  Plaintiff

may file an amended complaint to cure the pleading defects

identified in the opinion within thirty (30) days of the entry

of this order on the docket.


                              BY THE COURT,


                              _____ C.J.
                              Hon. Gary L. Lancaster,
                              Chief United States District Judge


cc:  All Counsel of Record